## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

CHERYL GREEN,

     Plaintiff,

v.

MALINDA FIVEASH,
HKD PROPERTIES, INC.,
a Florida Corporation, and
HILL-KELLY DODGE, INC., a
Florida corporation,

     Defendants.

Case No. 3:18-cv-2393-MCR- HTC

**Jury Trial Requested?**
☒ **YES**  ☐ **NO**

---

## FIRST AMENDED[1] AND SUPPLEMENTAL[2] VERIFIED COMPLAINT

CHERYL GREEN, acting individually and derivatively on behalf of HILL-KELLY DODGE, INC. ("Hill-Kelly"), files this First Amended Verified Complaint against MALINDA FIVEASH, HKD PROPERTIES, INC. ("HKD"), and HILL-KELLY, and states:

---

[1] The Complaint has been amended to add factual allegations and to include counts for breach of the implied covenant of good faith and fair dealing (Count III), and a request for the remedy of judicial dissolution (Count IV).

[2] The Complaint is in part supplemental because it asserts claims based upon acts and conduct that have occurred during the pendency of the case, including Malinda Fiveash's refusal to accept a $13 million offer to purchase Hill-Kelly in early 2019, Fiveash's improper January 2019 shareholder meeting to terminate the requirement that there be three directors of Hill-Kelly, and Fiveash's improper demand to Hill-Kelly for indemnification of both herself and HKD Properties for all costs and awards in this lawsuit.

## PARTIES

1.     Plaintiff Green, is a shareholder of Hill-Kelly. Green resides in Brentwood, Tennessee.

2.     Defendant Fiveash, is a shareholder of Hill-Kelly, its sole board member, sole director, president, and registered agent. Fiveash is sole owner, president, vice-president, and registered agent of HKD.

3.     Hill-Kelly is a Florida corporation with its principal place of business located at 6171 Pensacola Boulevard, Pensacola, Florida.

4.     HKD is a Florida corporation with its principal place of business located at 6171 Pensacola Boulevard, Pensacola, Florida.

## JURISDICTION

5.     This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332, as the citizenship of the parties is completely diverse and the amount in controversy exceeds $75,000. While Green files this case derivatively on behalf of Hill-Kelly as permitted by Florida law, Hill-Kelly is the alter ego of Fiveash, who opposes the filing of this lawsuit. Hill-Kelly is therefore antagonistic to Plaintiff Green in this action and is properly aligned as a defendant for purposes of diversity jurisdiction.

6.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## BACKGROUND

7.     Plaintiff owns 31.17 percent of the common shares of Hill-Kelly, which shares were acquired in 2009.

8.     Fiveash owns 68.83 percent of the common shares of Hill-Kelly. Fiveash is also the President, Chief Executive Officer, and sole Director of Hill-Kelly.

9.     Fiveash has misused her position as officer and director of Hill-Kelly and violated her fiduciary and statutory duties to Hill-Kelly and to Plaintiff individually by operating the company as her personal fiefdom without regard for the best interests of Hill-Kelly or Plaintiff as more specifically set forth below.

10.    At all material times, Fiveash, as corporate officer and director of Hill-Kelly, had a fiduciary duty to Plaintiff, including a duty to act with the level of care an ordinarily prudent person in a like position would exercise under similar circumstances, and a duty of loyalty.  The aforesaid duties require Fiveash to act in good faith in the best interests of Hill-Kelly and its shareholders, and to refrain from engaging in self-dealing activities that would permit her to receive an improper

3

personal benefit from her relationship with Hill-Kelly and from wasting corporate assets.

11.     In 2008, Green and her late-husband Andy Andrews invested in Hill-Kelly and saved it when it was losing more than $50,000 per month and was unable to obtain new vehicles due to an inability to satisfy its floorplan financier as to its financial fitness.

12.     After Green and Andrews saved the dealership and rectified its issues with its floorplan financier, Fiveash operated the dealership as her own personal financial fiefdom to the detriment of Green.

**Disguised Dividends via Inflated Leasing Arrangements:**

13.     Since 2008, Fiveash has caused Hill-Kelly to lease property from HKD Properties, an entity owned personally by Fiveash.

14.     The lease was not negotiated in an arms-length transaction and the rent exceeds the fair market value for the property, and has exceeded the fair market value at all times since Green's investment in 2008.

15.     The inflated leasing arrangement constitutes an improper dividend to Fiveash.

16.     In recent years, the amounts Hill-Kelly paid to HKD Properties were: $930,000 in 2014; $950,000 in 2015; $968,000 in 2016, and $988,000 in 2017.

17.     In the same years, Fiveash received a disguised dividend of $322,587 in 2014; $370,897 in 2015; $416,560 in 2016; and $376,954 in 2017, via HKD Properties K-1 distributions.

18.     While Fiveash was extracting the disguised dividends via HKD Properties, Green only received $4,133 per month (approximately $50,000 annually) for the large corner lot and frontage she bought for the benefit of Hill-Kelly.

**Excessive Salaries and Fraudulent, Unreasonable Bonuses / Waste:**

19.     Fiveash has caused Hill-Kelly to pay her a salary that exceeds the salary of comparably situated executives in similar automobile dealerships for the positions held by Fiveash.

20.     The salary is also far in excess of the amount that is reasonable for the services provided to Hill-Kelly by Fiveash, and its profitability.

21.     Fiveash's total compensation has no relationship to the success of the business.   Between 2013 and 2019, Fiveash's income and the dealership's net income fluctuated as follows:

| Year | W-2 Compensation | Dealership Net Income |
|------|------------------|-----------------------|
| 2013 | $318,084 | $1,007,278 |
| 2014 | $329,054 | $767,886 |
| 2015 | $397,040 | $766,314 |

| 2016 | $528,118 | $1,290,795 |
| 2017 | $338,070 | $1,241,564 |

22.    Fiveash also caused Hill-Kelly to pay bonuses to Fiveash in an amount

that is not justified by Fiveash's contributions to Hill-Kelly, company performance,

or profits.  In fact, Fiveash runs a farm, "Cavu Farms", through the books of Hill-

Kelly, which specializes in thoroughbred race horses and clydesdales.





6

23.     Since at least October, 2013, Fiveash has issued herself bonuses at her pleasure to fund the farm.

24.     After farm expenses were tallied at the end of each month or quarter, Hill-Kelly's "controller" would issue Fiveash a "bonus" for whatever amount was necessary to cover the expenses of the farm:

---

**Belita Knighten**

| | |
|---|---|
| **From:** | Belita Knighten |
| **Sent:** | Wednesday, July 1, 2015 10:36 AM |
| **To:** | MDixon1017@aol.com |
| **Subject:** | FARM AR AND AR 063015.xlsx |
| **Attachments:** | FARM AR AND AR 063015.xlsx |

I have been accruing as you know for your farm ar. I thought it was time to clear out some of it. Attached, shows how much I cleared through payroll and 217c . The monthly accrual is 7710.60 as a bonus for you and will go through the end of the year. I accure to 704/217c. I grossed you up to 217c. It will be zero by year e

Maybe at year end I gross you up for what is left in the ar's and then next year we clear out the farm ar's monthly by grossing you up for  a bonus monthly?

Please advise if you want to do this differently.

Thank you,


Belita Knighten
Controller
850-476-9078



**Belita Knighten**

| | |
|---|---|
| **From:** | Belita Knighten |
| **Sent:** | Friday, November 13, 2015 11:17 AM |
| **To:** | 'MDixon1017@aol.com' |
| **Subject:** | FW: FARM AR AND AR 063015.xlsx |
| **Attachments:** | AR AND FARM AR 111315.xlsx |

The farm ar has built up again. It's time to bonus you to clear it and write off the bonus expense as a 13th month I guess. Please advise otherwise.
Next year, I think we need to clear this monthly. You have more farm people these days and that's all good but the ar is building up much faster than it used to.

Thank you,

Belita Knighten
Controller
850-476-9078



**Belita Knighten**

| | |
|---|---|
| **From:** | Belita Knighten |
| **Sent:** | Wednesday, September 14, 2016 10:09 AM |
| **To:** | 'mdixon1017@aol.com' |
| **Subject:** | MALINDA AR AND FARM AR.xlsx |
| **Attachments:** | MALINDA AR AND FARM AR.xlsx |

I know the farm payroll and ar is not your favorite topic. But, I would appreciate you emailing me with how you want to pay this or how you want to be grossed up to clear it. .

In August, the expense was 15,946.11. With OASDI capped out, I can continue take out apx 2500 from your payroll and still keep you at the apx 4500 net you like. But, that leaves 13446.11 in addition to the previous month's balances.  Month to month that adds up and I don't see how this will ever clear.

Do you want me to gross you up at year end and clear this payroll? And, then we can monthly bonus you to clear payroll. That apx bonus amount to cover taxes and clear payroll is $19,150 additional per month. I think I need to gross you up for sure and clear out ex-employees like Caitlyn Gasser and Steven Fretwell. I will go ahead and do that unless you object. I have accrued 7710.60 for a bonus for you and that with a little more would clear at least the 2 smaller ar's. That accrual is in 217c under your control #.

I can talk to Gary about your tax implication since he now has the complete picture. This has concerned me for a long time. Please let me know.

Thanks,
Belita

---

**Belita Knighten**

| | |
|---|---|
| **From:** | Belita Knighten |
| **Sent:** | Tuesday, October 24, 2017 12:00 PM |
| **To:** | 'mdixon1017@aol.com' |
| **Subject:** | MALINDA AR AND FARM AR  and your bonus accrual |
| **Attachments:** | MALINDA AR AND FARM AR 102417.xlsx |

Your personal ar is zero. Your farm ar is not- see attached. But, I have accrued 77,106 (Jan-Oct) for a bonus for you with anticipation that we could use this to help offset the farm payroll. It's not enough to cover it all with a 35 percent tax bracket. But, I could cut it way down. Let me know please.

Thanks,
Belita

---

25.     When the farm expenses got to be too much to justify with "bonuses",
Fiveash and the controller designated them as "shareholder loans" which were
sometimes offset with bonuses and sometimes shifted to pre-paid marketing
expenses.

## Improper Expenditures / Uses of Hill-Kelly Resources / Waste:

26.     Instead of paying a dividend to Green, Fiveash caused significant Hill-
Kelly funds to be used to purchase horses, wagons, and trailers for Cavu Farms. Hill-
Kelly's directly paid for the following expenses not logically associated with the
operation of a car dealership:

      a.  25/2015 $25,000 CBUSA "Clydesdale Horse Purchase,"

      b.  12/10/2015 $23,000 JFP Equine Inc. "Clydesdale Harness,"

      c.  12/26/2015 $9,000 "Horse Trailer per MLF,"

      d.  12/26/2015 $30,000 "William Horse per MLF,"

      e.  2/12/2016 $9,852 JFP Equine, Inc. "JFP Equine,"

f.   4/22/2016 $9,575 J W Schut "Red Wagon (per MLF),"

g.   5/2/2016 $95,000 CBUSA "Lot 25/26 St. Lois Clydes,"

h.   5/4/2016        $47,448        Shipshewana        Trailers        "Horse

     Trailer/Clydesdales,"

i.   1/19/2016 $52.59 Verizon Wireless "Farm/619-0170" charged to

     telephone expense,

j.   12/2/2016 $63.95 Wex Bank "Farm Truck" charged to company,

     car expense,

k.   All farm payroll paid by Hill-Kelly Dodge, Inc.,

l.   Hill-Kelly credit card purchase under Malinda Fiveash's name:

     Lowe's   of   Ensley   Pensacola   $2,620.00   on   2/19/2015   and

     $352.60 on 2/23/2015 with note on the statement "FA #530 Fl.

     Blanca,"

m.   Aqua Décor & Design 850-418-3998 $620.44 on 4/7/2015 with

     a note on the statement "FA #540 (Chairs Fl. Blanca) Malinda,"

n.   Jefferspet.com $148.57 on 4/29/2015,

o.   Jefferspet.com $142.00 on 4/30/2015,

p.   Jefferspet.com $202.36 on 5/22/2015,

q.   Norwegian Cruise Line $750.00 on 3/10/2017, and

r.   Norwegian Cruise Line $4,876.51 on 6/19/2017.

27.     At the same time, Hill-Kelly has been forced to pay for substantial expenditures (in excess of $24,000) relating to a property located at 314 S Florida Blanca Street, Pensacola, Florida 32502, with no apparent business purpose.

28.     Hill-Kelly has also taken the position in defense of this suit that it has made "loans" or "bonuses" to Malinda Fiveash for "personal expenses" that would make the otherwise improper payments acceptable.  But, pressed as to the terms of any shareholder loan or payment, Hill-Kelly has generically said they are for "personal expenses" and are evidenced by schedules and supporting statements contained in Hill-Kelly Bates Nos.: HKD MISC 000398-000406; 0407; 000065-000066; 000369; 000374; 000371; 000382; 000368; 000379; 000381; 000363-000364; 000383; 000378; 000372; 000385-000388; 000384; 000357; 000354; 000365; 000376; 000367; 000380; 000361; and HKD AR 000036-000058. None of these documents contain the material terms of any shareholder loan, and upon information and belief all "shareholder loans" or "bonuses" are illegal, arbitrary, improper, and a last-minute attempt to create a patina of appropriateness for Fiveash's financial fiefdom.

**Improperly Obligating Hill-Kelly to Cover Fiveash and HKD's Loans to Coastal Bank and Trust:**

29.     In 2017, Fiveash via her wholly owned instrumentality, HKD Properties, borrowed $8,788,129.00 from Coastal Bank and Trust a division of Synovus.

11

30.     Without board approval, Fiveash obligated Hill-Kelly to repay HKD's $8,788,129.00 in indebtedness owed to Coastal Bank and Trust a division of Synovus.

31.     To obtain the loan, Fiveash misrepresented that she had director approval and authorization to obligate Hill-Kelly to pay the debts of her instrumentality, HKD Properties, by presenting Coastal Bank & Trust with a materially false "Corporate Resolution to Guaranty, Pledge and Incumbency Certificate."

32.     The false "Corporate Resolution to Guaranty, Pledge and Incumbency Certificate" stated "**Resolutions Adopted**. At a meeting of the board of directors of the Corporation, duly called and held on February 8, 2017, at which a quorum was present and voting, or by other duly authorized action in lieu of a meeting, the resolutions set forth in this Resolution were adopted."

33.     No meeting was held on February 8, 2017, and no director authorization was obtained to enable this materially false resolution.

34.     Among the other matters directors did not authorize, Fiveash represented to Coastal Bank & Trust that she had the authority and was empowered and directed to have Hill-Kelly "guaranty and pledge as security property of the Corporation the debts of any affiliate, including any guaranty of all obligations HKD Properties, Inc."

12

35.    Of the $8,788,129.00 HKD Properties borrowed from Coastal Bank and Trust, that Fiveash caused Hill-Kelly to become obligated to repay, Fiveash was required to use up to $750,000.00 of the loan to pay the purchase price of real property situated at the southwest corner of Industrial Blvd and Pensacola Blvd, then-owned by Cheryl Green's company Andy and Cheryl Properties, LLC.

36.    This $750,000.00 was never offered or paid to Cheryl Green or Andy & Cheryl Properties.

37.    One million dollar of the monies borrowed by HKD Properties was lent to Hill-Kelly for the purpose of paying off an obligation owing to Cheryl Green.

38.    But this too resulted in harm to the corporation, because Fiveash obligated Hill-Kelly to pay HKD Properties far more each month than was paid pursuant to the interest-only loan to Green, resulting in less funds being available each month for distribution to shareholders.

**Failure to Conduct Shareholder Meetings:**

39.    In violation of Florida law, no annual shareholder meetings for Hill-Kelly were held between 2009 and 2019.

40.    Only after the filing of this lawsuit did Fiveash notice a shareholder meeting.

41.    But even that resulted in further self-dealing for Fiveash, because she used that opportunity to eliminate the three-director requirement that was in the bylaws to ensure appropriate oversight.

**Post-Lawsuit Termination of Three Director Requirement:**

42.    In January 2019, Fiveash noticed a meeting of shareholders for the innocuous reason of amending the bylaws to be in accordance with Florida law.

43.    But at the meeting, Fiveash, over Green's objection, improperly terminated the requirement that there be three directors of Hill-Kelly, and appointed herself as sole-director.

44.    During the same meeting, Fiveash admitted to having recently approved a loan between HKD Properties and Hill-Kelly, which constitutes an insider transaction that requires independent director oversight, but would not reveal any specifics as to the details of the transaction.

**Improper Indemnification:**

45.    Following the January 2019, "shareholder meeting" Fiveash demanded that Hill-Kelly (which she now was sole director of) indemnify her and her instrumentality HKD Properties, for this lawsuit.

46.    Fiveash apparently approved the demand for indemnification that she sent individually and as sole officer and director of HKD Properties to herself as sole director and officer of Hill-Kelly, and is further diluting the funds of Hill-Kelly by

requiring it to pay for her litigation expenses, which she is incidentally making larger than necessary by having multiple firms involved to represent her in each of her various capacities.

47.     After the demand for indemnification, Fiveash caused the nominal defendant, Hill-Kelly, on whose behalf Green is suing, to aggressively litigate the case, raising more than 311 objections to one set of document requests.

48.     The improper insider indemnification further depletes the resources of Hill-Kelly and constitutes waste, just as does the car dealership's operation of a Clydesdale farm.

**Failure to Pay Dividends:**

49.     No dividends were paid by Hill-Kelly since Green has been a shareholder, until Fiveash recently issued a small dividend after the commencement of this lawsuit.

50.     Fiveash is due to receive all dividends she should have received had there not been egregious, ongoing breaches of fiduciary duties by Fiveash, and corporate waste for the sole benefit of Fiveash.

**Failure to Act in Best Interests of Shareholders:**

51.     In late 2018, Hill-Kelly received an offer from a local car dealer to purchase Hill-Kelly for $12 million.

52.     In early 2019, Hill-Kelly received an offer from the same local car dealer to purchase Hill-Kelly for $13 million.

53.     Reasonable prudence requires that the offers be given serious consideration and that Green be consulted.

54.     Fiveash did not notify Plaintiff of the offers and has not responded to the offers.

**Failure to Maintain Directors and Officers Liability Insurance:**

55.     Fiveash failed to obtain Directors and Officers (D&O) liability insurance which she had a fiduciary obligation to obtain.

56.     Because she failed to procure and maintain D&O insurance, Hill-Kelly and Green have been harmed because there may be insufficient assets to satisfy the judgment in this action, which could have been entirely unnecessary had a D&O carrier been involved in pre-suit investigation.

**Pre-Suit Demand Requirements Have Been Satisfied:**

57.     On September 14, 2018, Plaintiff notified Fiveash, in her capacity as sole director of Hill-Kelly, of the violations set forth above, and demanded that the board of directors take appropriate action to remedy the violations.  A copy of the written notice is attached hereto as **Exhibit A**.

58.     No response has been received to the notice.

59.     Upon information and belief, no investigation was even done in response to the demand.

## COUNT I – BREACH OF FIDUCIARY DUTIES
### (Derivative Claims – Using Hill-Kelly to Further Defendant, Malinda Fiveash's, Personal Interests and those of HKD Properties Instead of the Interests of Shareholders, and Corporate Waste)

60.     Plaintiff realleges and reincorporates paragraphs 1-57 above.

61.     Plaintiff asserts this claim in a derivative capacity, on behalf of Hill-Kelly, pursuant to Section 607.07401, Florida Statutes.

62.     As director and majority shareholder of Hill-Kelly, Fiveash has been charged with fiduciary duties to Hill-Kelly's shareholders in relation to the management and operation of Hill-Kelly.

63.     As a fiduciary, Fiveash is required to, among other things, act in good faith, with the care an ordinarily prudent person would exercise, in a manner reasonably believed to be in the best interests of the corporation, and not utilize her control of the corporation for her own personal advantage.

64.     Since 2008, Fiveash has deliberately, willfully, intentionally, and maliciously, or with conscious disregard for the best interests of the corporation without justification, privilege, or authority, improperly and wrongfully breached and conspired to breach her fiduciary duties and derived improper personal benefits from Hill-Kelly, both directly and indirectly, by, among other things, the following:

17

a. causing Hill-Kelly to enter into above-market leases with her instrumentality, HKD Properties;

b. causing Hill-Kelly not to have the requisite number of board members at all times, and then improperly, and over objection, eliminating the three-director requirement during the pendency of this lawsuit in January, 2019;

c. causing Hill-Kelly to approve insider transactions with HKD Properties and Coastal Bank and Trust without independent review and oversight as required by law (including, without limitation, all alleged "shareholder loans" Fiveash alludes to but has yet to identify with specificity that were used to fund the operations of Cavu Farms, and to pay for the artwork and improvements at the Fl Blanca street home; the March 22, 2018 promissory note between Hill-Kelly and HKD Properties; and the February 2017 guarantee by Hill-Kelly of all of Fiveash and HKD's obligations to Coastal Bank and Trust on behalf of Hill-Kelly);

d. causing Hill-Kelly to fund the operations of Cavu Farms at great expense to Hill-Kelly, and then fictitiously claiming "bonuses"

or "shareholder loans" to attempt to set off the costs of farm operations;

e. causing Hill-Kelly to sign a guarantee of HKD Properties loans to Coastal Bank and Trust, without requisite director approval, and with false certifications that such approval had been obtained;

f. causing Hill-Kelly to dilute its earnings with unnecessary farm expenditures and expenditures for the home, artwork, and items located at 314 S Florida Blanca Street, Pensacola, Florida 32502;

g. directing Hill-Kelly to indemnify Fiveash and HKD Properties in this litigation;

h. failing to pay Green the salary that was part of the business agreement after Andy Andrews death;

i. ignoring, and/or refusing to accept Sandy Sansing's repeated offers to purchase the entirety of Hill-Kelly for $12, and then $13 million dollars;

j. directing Hill-Kelly to aggressively litigate in this case, when it is the nominal defendant on whose behalf Green is suing;

k. failing to maintain appropriate D&O insurance; and

l.  failing to properly and timely issue appropriate dividends to shareholders.

65.    The aforesaid acts constitute a violation of Fiveash's fiduciary and statutory obligations to Hill-Kelly and to Plaintiff personally.

**WHEREFORE**, Plaintiff seeks judgment for the following relief and requests trial by jury:

a)  Appointing an independent investigator or law firm to examine the books, records, and dealings of Hill-Kelly and to report to this Court on its findings;

b)  Requiring the election by the shareholders of additional independent members of the board of directors;

c)  Establishing an independent compensation committee to set Fiveash's compensation as chief executive officer and director;

d)  Requiring the board of directors of Hill-Kelly to call annual meetings of shareholders;

e)  Requiring renegotiation of any lease or other contract negotiated by Fiveash through self-dealing in amounts above a fair market price;

f)  Requiring payment of dividends to shareholders from surplus profits of Hill-Kelly;

g)  Entering judgment for Hill-Kelly for damages; and awarding Plaintiff attorney's fees and costs for prosecution of this action.

## Count II – BREACH OF FIDUCIARY DUTIES
### (Direct Claims – Using Hill-Kelly to Further Defendant, Malinda Fiveash's, Personal Interests and those of HKD Properties Instead of the Interests of Shareholders, and Corporate Waste)

66.     Plaintiff realleges and reincorporates paragraphs 1-57 above.

67.     Fiveash has caused Hill-Kelly to pay her substantial sums of money that inured to the personal benefit of Fiveash and provided no benefit to Hill-Kelly. While not designated as such, such payments have in effect been dividends or profit-sharing payments or distributions, and include:

a.  causing Hill-Kelly to enter into above-market leases with her instrumentality, HKD Properties;

b.  causing Hill-Kelly not to have the requisite number of board members at all times, and then improperly, and over objection, eliminating the three-director requirement during the pendency of this lawsuit in January, 2019;

c.  causing Hill-Kelly to approve insider transactions with HKD Properties and Coastal Bank and Trust without independent review and oversight as required by law (including, without limitation, all alleged "shareholder loans" Fiveash alludes to but has yet to identify with specificity that were used to fund the operations of Cavu Farms, and to pay for the artwork and improvements at the Fl Blanca street home; the March 22, 2018

21

promissory note between Hill-Kelly and HKD Properties; and the February 2017 guarantee by Hill-Kelly of all of Fiveash and HKD's obligations to Coastal Bank and Trust on behalf of Hill-Kelly);

d. causing Hill-Kelly to fund the operations of Cavu Farms at great expense to Hill-Kelly, and then fictitiously claiming "bonuses" or "shareholder loans" to attempt to set off the costs of farm operations;

e. causing Hill-Kelly to sign a guarantee of HKD Properties loans to Coastal Bank and Trust, without requisite director approval, and with false certifications that such approval had been obtained;

f. causing Hill-Kelly to dilute its earnings with unnecessary farm expenditures and expenditures for the home, artwork, and items located at 314 S Florida Blanca Street, Pensacola, Florida 32502;

g. directing Hill-Kelly to indemnify Fiveash and HKD Properties in this litigation;

h. failing to pay Green the salary that was part of the business agreement after Andy Andrews death;

22

    i.  ignoring, and/or refusing to accept Sandy Sansing's repeated offers to purchase the entirety of Hill-Kelly for $12, and then $13 million dollars;

    j.  directing Hill-Kelly to aggressively litigate in this case, when it is the nominal defendant on whose behalf Green is suing;

    k.  failing to maintain appropriate D&O insurance; and

    l.  failing to properly and timely issue appropriate dividends to shareholders.

68.    The aforesaid acts constitute a violation of Fiveash's fiduciary and statutory obligations to Hill-Kelly and to Plaintiff personally

**WHEREFORE**, Plaintiff seeks judgment for compensatory and punitive damages and such other relief as the Court deems appropriate, and requests trial by jury.

### COUNT III - BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against Malinda Fiveash, HKD Properties, and Hill-Kelly)

69.    Plaintiff realleges and reincorporates paragraphs 1-57 above.

70.    In 2008, Cheryl Green and her late-husband Andy Andrews purchased shares in Hill-Kelly.

71.    At the time of the purchase of shares, Hill-Kelly was in turmoil, losing in excess of $50,000 per month, and on a "hold" status with its floorplan financier.

72.     Green and Andrews saved the dealership by loaning it much-needed funds, guaranteeing its obligations to the floorplan financier, and providing needed guidance.

73.     As with all business relationships, the business relationship between Green and Andrews on the one hand and Fiveash, HKD Properties, and Hill-Kelly, on the other, had an implied covenant of good faith and fair dealing.

74.     Green and Andrews reasonably expected that they would receive the benefit of the investment and that Fiveash would at all times act fairly and in good faith.

75.     Fiveash breached, and caused Hill-Kelly to breach, the implied covenant of good faith and fair dealing, by:

    a.  causing Hill-Kelly to enter into above-market leases with her instrumentality, HKD Properties;

    b.  causing Hill-Kelly not to have the requisite number of board members at all times, and then improperly, and over objection, eliminating the three-director requirement during the pendency of this lawsuit in January, 2019;

    c.  causing Hill-Kelly to approve insider transactions with HKD Properties and Coastal Bank and Trust without independent review and oversight as required by law (including, without

limitation, all alleged "shareholder loans" Fiveash alludes to but has yet to identify with specificity that were used to fund the operations of Cavu Farms, and to pay for the artwork and improvements at the Fl Blanca street home; the March 22, 2018 promissory note between Hill-Kelly and HKD Properties; and the February 2017 guarantee by Hill-Kelly of all of Fiveash and HKD's obligations to Coastal Bank and Trust on behalf of Hill-Kelly);

d.  causing Hill-Kelly to fund the operations of Cavu Farms at great expense to Hill-Kelly, and then fictitiously claiming "bonuses" or "shareholder loans" to attempt to set off the costs of farm operations;

e.  causing Hill-Kelly to sign a guarantee of HKD Properties loans to Coastal Bank and Trust, without requisite director approval, and with false certifications that such approval had been obtained;

f.  causing Hill-Kelly to dilute its earnings with unnecessary farm expenditures and expenditures for the home, artwork, and items located at 314 S Florida Blanca Street, Pensacola, Florida 32502;

g. directing Hill-Kelly to indemnify Fiveash and HKD Properties in this litigation;

h. failing to pay Green the salary that was part of the business agreement after Andy Andrews death;

i. ignoring, and/or refusing to accept Sandy Sansing's repeated offers to purchase the entirety of Hill-Kelly for $12, and then $13 million dollars;

j. directing Hill-Kelly to aggressively litigate in this case, when it is the nominal defendant on whose behalf Green is suing;

k. failing to maintain appropriate D&O insurance; and

l. failing to properly and timely issue appropriate dividends to shareholders.

76.     Green has been harmed by Fiveash's failures, as she has lost both her invested capital and all dividends and/or sales proceeds which she would be entitled to receive absent the violations of the covenant of good faith and fair dealing.

**WHEREFORE**, Green respectfully requests an award of compensatory and punitive damages for Fiveash and Hill-Kelly's failures to abide by the covenant of good faith and fair dealing.

### COUNT IV – ALTERNATIVE REMEDY OF JUDICIAL DISSOLUTION (AGAINST FIVEASH AND HILL-KELLY)

77.    The allegations of paragraphs 1 through 74 are repeated and incorporated herein as if set out in full.

78.    Green asserts this claim pursuant to Sections 607.1430 and 607.1434, Florida Statutes.

79.    This Court has jurisdiction pursuant to Section 607.1430 of the Florida Statutes.

80.    Green is a minority shareholder in Hill-Kelly, a corporation having fewer than 35 shareholders.

81.    Fiveash has wasted, and caused Hill-Kelly to waste, and misapply corporate assets causing material injury to Hill-Kelly, including but not limited to the following:

   a. causing Hill-Kelly to enter into above-market leases with her instrumentality, HKD Properties;

   b. causing Hill-Kelly not to have the requisite number of board members at all times, and then improperly, and over objection, eliminating the three-director requirement during the pendency of this lawsuit in January, 2019;

   c. causing Hill-Kelly to approve insider transactions with HKD Properties and Coastal Bank and Trust without independent review and oversight as required by law (including, without

limitation, all alleged "shareholder loans" Fiveash alludes to but has yet to identify with specificity that were used to fund the operations of Cavu Farms, and to pay for the artwork and improvements at the Fl Blanca street home; the March 22, 2018 promissory note between Hill-Kelly and HKD Properties; and the February 2017 guarantee by Hill-Kelly of all of Fiveash and HKD's obligations to Coastal Bank and Trust on behalf of Hill-Kelly);

d.  causing Hill-Kelly to fund the operations of Cavu Farms at great expense to Hill-Kelly, and then fictitiously claiming "bonuses" or "shareholder loans" to attempt to set off the costs of farm operations;

e.  causing Hill-Kelly to sign a guarantee of HKD Properties loans to Coastal Bank and Trust, without requisite director approval, and with false certifications that such approval had been obtained;

f.  causing Hill-Kelly to dilute its earnings with unnecessary farm expenditures and expenditures for the home, artwork, and items located at 314 S Florida Blanca Street, Pensacola, Florida 32502;

g. directing Hill-Kelly to indemnify Fiveash and HKD Properties in this litigation;

h. failing to pay Green the salary that was part of the business agreement after Andy Andrews death;

i. ignoring, and/or refusing to accept Sandy Sansing's repeated offers to purchase the entirety of Hill-Kelly for $12, and then $13 million dollars;

j. directing Hill-Kelly to aggressively litigate in this case, when it is the nominal defendant on whose behalf Green is suing;

k. failing to maintain appropriate D&O insurance; and

l. failing to properly and timely issue appropriate dividends to shareholders.

**WHEREFORE**, Green respectfully requests the Court Order Judicial Dissolution of Hill-Kelly, Inc., and appoint a receiver to wind down up business affairs.

## COUNT V – AVOIDANCE AND RECOVERY OF IMPROPER DIVIDENDS AND/OR FRAUDULENT TRANSFERS TO HKD PROPERTIES AND MALINDA FIVEASH
### (Against Malinda Fiveash and HKD Properties, Inc.)

82. Plaintiff realleges and reincorporates paragraphs 1-57 above.

83. Each lease payment from Hill-Kelly to HKD Properties was above market.

84.     Each above-market lease payment constituted a disguised dividend to or for the benefit of HKD Properties sole owner, Malinda Fiveash, resulting in improper dividends to HKD Properties in the following amounts:

      a.  $258,950

      b.  $322,587 in 2014;

      c.  $370,897 in 2015;

      d.  $416,560 in 2016; and

      e.  $376,954 in 2017.[3]

85.     Each "bonus" or "shareholder loan" that was arbitrarily or improperly made to Malinda Fiveash, without independent director review, in amounts to be established during discovery.

86.     The improper bonuses consist of all bonuses paid to Fiveash as part of her compensation indicated on Hill Kelly Bates Nos.: HKD Compensation 000071-000081; 000086-000105; and 000064.

87.     The improper "bonuses" or "shareholder loans", and all "bonuses" or "shareholder loans" booked initially booked as "bonuses" or "shareholder loans" and converted to other categories, such as "pre-paid marketing expenses" are difficult to identify at this stage of discovery.   When Hill-Kelly was asked in an interrogatory to identify with specificity all such "bonuses" or "shareholder loans"

---

[3] 2018 K1 to Malinda Fiveash has yet to be received.

to Malinda Fiveash, Hill Kelly generically referred to the following which were produced, but none show the terms or even amounts of payment to Fiveash: Hill-Kelly Bates Nos.: HKD MISC 000398-000406; 0407; 000065-000066; 000369; 000374; 000371; 000382; 000368; 000379; 000381; 000363-000364; 000383; 000378; 000372; 000385-000388; 000384; 000357; 000354; 000365; 000376; 000367; 000380; 000361; and HKD AR 000036-000058.

88.    Each payment made by Hill-Kelly for horses, horse trailers, horse equipment, farm payroll, artwork or other items for the Blanca Street location constituted an improper dividend to or for the benefit of Malinda Fiveash, whether paid directly to her, or to third-parties on her behalf, including, without limitation the following entries from Hill-Kelly's General Ledgers:

    a.  25/2015 $25,000 CBUSA "Clydesdale Horse Purchase,"

    b.  12/10/2015 $23,000 JFP Equine Inc. "Clydesdale Harness,"

    c.  12/26/2015 $9,000 "Horse Trailer per MLF,"

    d.  12/26/2015 $30,000 "William Horse per MLF,"

    e.  2/12/2016 $9,852 JFP Equine, Inc. "JFP Equine,"

    f.  4/22/2016 $9,575 J W Schut "Red Wagon (per MLF),"

    g.  5/2/2016 $95,000 CBUSA "Lot 25/26 St. Lois Clydes,"

    h.  5/4/2016    $47,448    Shipshewana    Trailers    "Horse Trailer/Clydesdales,"

    i.   1/19/2016 $52.59 Verizon Wireless "Farm/619-0170" charged to telephone expense,

    j.   12/2/2016 $63.95 Wex Bank "Farm Truck" charged to company, car expense,

    k.   All farm payroll paid by Hill-Kelly Dodge, Inc.,

    l.   Hill-Kelly credit card purchase under Malinda Fiveash's name: Lowe's of Ensley Pensacola $2,620.00 on 2/19/2015 and $352.60 on 2/23/2015 with note on the statement "FA #530 Fl. Blanca,"

    m.   Aqua Décor & Design 850-418-3998 $620.44 on 4/7/2015 with a note on the statement "FA #540 (Chairs Fl. Blanca) Malinda,"

    n.   Jefferspet.com $148.57 on 4/29/2015,

    o.   Jefferspet.com $142.00 on 4/30/2015,

    p.   Jefferspet.com $202.36 on 5/22/2015,

    q.   Norwegian Cruise Line $750.00 on 3/10/2017, and

    r.   Norwegian Cruise Line $4,876.51 on 6/19/2017.

89.    In addition, to the extent Hill-Kelly made any of the payments in paragraphs 83, 84, or 85 or any other payment to or for the benefit of Malinda Fiveash while Hill-Kelly was insolvent for less than reasonably equivalent value, or with actually fraudulent intent, constitute avoidable transfers pursuant to Chapter

726, Florida Statutes.  Upon information and belief Hill-Kelly was insolvent at the time of Green's investment in 2008, but became solvent sometime thereafter.

**WHEREFORE**, Green respectfully requests the Court avoid any and all illegal or disguised dividends, fraudulent transfers, and improper or arbitrary "bonuses" or "shareholder loans" and grant any and all such other and further relief as is just and equitable.

/s/ Michael H. Moody
BARRY RICHARD, FBN 0105599
FRED F. HARRIS, JR., FBN 253359
MICHAEL H. MOODY, FBN 66471
GREENBERG TRAURIG, P.A.
101 East College Avenue
Tallahassee, FL  32301
Telephone (850) 222-6891
Facsimile (850) 681-0207
richardb@gtlaw.com
harrisf@gtlaw.com
moodym@gtlaw.com
trammellc@gtlaw.com
flservice@gtlaw.com
*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 24, 2019, the foregoing document was

served on the following:

T. Julian Motes
Shirley M. Justice
Sirote & Permutt, PC
One St. Louis Centre, Suite 1000
Post Office Drawer 2025
Mobile, AL 36652-2025
jmotes@sirote.com
sjustice@sirote.com

Kathryn I. Kasper
Sirote & Permutt, P.C.
1201 S. Orlando Avenue, Suite 430
Winter Park, FL 32790
kkasper@sirote.com
*Counsel for Hill-Kelly Dodge, Inc.*

Todd M. Ladouceur
Galloway, Johnson, Tompkins, Burr & Smith
118 East Garden Street
Pensacola, Florida 32502
tmlservice@gallowaylawfirm.com
*Counsel for Defendants, Malinda Fiveash and HKD Properties, Inc.*

/s/Michael H. Moody
Michael H. Moody

*TAL 452330075v4*

34

# VERIFICATION

Under penalties of perjury, I declare that I have read the foregoing

Complaint and that the facts stated in it are true to the best of my knowledge and

belief.

Signed this 24ᵗʰ day of May, 2019.

_____

CHERYL GREEN